Filed 11/5/25  In re L.C. CA4/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E081670 |
| Plaintiff and Respondent, | (Super.Ct.No. J292768) |
| v. | OPINION |
| A.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Conditionally reversed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

I.  INTRODUCTION

Defendant and appellant A.C. (Mother) appeals from the June 21, 2023 orders terminating parental rights to Mother's child, L.C.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother claims that plaintiff and respondent, San Bernardino County Children and Family Services (CFS), failed to discharge its initial duty of inquiry, under section 224.2, subdivision (b) (§ 224.2(b)), by asking several of L.C.'s maternal extended family members (five of Mother's six siblings) whether L.C. is or may be an "Indian child" for purposes of the Indian Child Welfare Act.  (25 U.S.C. § 1901 et. seq.; ICWA).  Mother asks that we conditionally reverse the section 366.26 orders and remand the matter with directions to the juvenile court to ensure that CFS discharges its initial duty of inquiry (§ 224.2(b)), regarding L.C.'s material extended family members.

In our original opinion, we concluded that section 224.2, subdivision (b), did not apply because the children were taken into protective custody pursuant to a warrant.  Our Supreme Court granted review, remanded the cause to us for reconsideration in light of its decision in *In re Ja.O.* (2025) 18 Cal.5th 271, and we invited the parties to submit supplemental briefing on the matter.  In supplemental briefing, CFS argues that, under the specific facts of this case, the juvenile court did not abuse its discretion in concluding that an adequate inquiry had been conducted.  We conclude that the record in this case does not contain substantial evidence to support the juvenile court's implied finding that CFS

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

fulfilled its duty under section 224.2 and conditionally reverse the order terminating Mother's parental rights.

## II. FACTS AND PROCEDURE

L.C. was born in December 2021. On March 22, 2022, Mother went to a sheriff's substation in Hesperia with L.C. and reported there were suspicious vehicles parked in front of her home, she was being "scammed out of $5,000," and a person she met through social media was sending fraudulent checks to her bank account. Mother became "distraught to the point . . . she was shaking uncontrollably" and was told to "put the baby down." Mother reported receiving psychiatric services and suffering panic attacks. Following her assessment by "TEST social workers," Mother was released to go home with L.C.

On April 6, 2022, a social worker went to Mother's home to see whether Mother had family members who could help Mother with a safety plan. At the "front house" on the property, the worker spoke with the property owner who reported: Mother had lived in the "back house" for several years but was not home; L.C.'s father did not "come around," but Mother's ex-husband and the father of Mother's older daughter, A., helped Mother with L.C.; and Mother had recently been in car accident with L.C. in the car. The owner also said that L.C.'s maternal grandmother had died several years earlier, and that Mother had "an aunt from Oregon who sent her cards in the mail." The owner denied other knowledge of Mother's friends or family.

Later on April 6, 2022, the worker spoke with Mother's ex-husband, J.C., who reported Mother cared for L.C.'s basic needs but agreed Mother's paranoia had "been

3

increasing" since L.C. was born.  J.C. and Mother divorced in 2016; their daughter, A. (age 15), lived with J.C.  J.C. said there was a history of mental health issues in Mother's family; Mother suffered sexual abuse, physical abuse, and domestic violence as a child; and Mother had been diagnosed with bipolar disorder, depression, panic attacks, and PTSD (post-traumatic stress disorder).

Also on April 6, the worker spoke with Mother at a hospital where Mother had taken L.C.  When asked why she had taken L.C. to the hospital, Mother told "a very lengthy story regarding people scamming her and taking pictures of [L.C.] for money." Mother also claimed that L.C.'s biological father, C.B., was hurting L.C.  The hospital would not discharge L.C. to Mother.  CFS obtained a detention warrant and served the warrant on Mother at the hospital on April 6.  L.C. was initially placed with J.C.

On April 8, 2022, a dependency petition for L.C. was filed, alleging Mother suffered from mental health problems that limited her ability to care for L.C. and the whereabouts of L.C.'s alleged father, C.B., were unknown.  (§ 300, subds (b)(1), (g).) The petition stated CFS had been unable to complete an ICWA inquiry because Mother was "unable to answer" and C.B.'s whereabouts were unknown.

At the detention hearing on April 11, 2022, Mother was present with her father and one of her three sisters.  In response to the court's questions, Mother, her father, and her sister each told the court that they did not have any Native American ancestry. Mother also completed a "Parent:  Family Find and ICWA Inquiry" form and a "Parental Notice of Indian Status" form (ICWA-020), indicating on both forms that neither Mother nor L.C. had Native American ancestry.  On the family find form, Mother provided

4

phone numbers for her father, her sister, and for Mother's two other sisters. The court appointed a guardian ad litem for Mother and ordered L.C. detained outside of parental custody.

On April 14, 2022, L.C. was placed with a nonrelative extended family member (NREFM). On April 28, CFS filed a jurisdiction and disposition report stating that Mother and "all available relatives denied any Native American ancestry." The report also stated that Mother was born and raised in Utah; Mother's mother was deceased; Mother's father still lived in Utah; and Mother had six siblings. Mother identified her sisters as her support network. C.B. denied he was L.C.'s biological father and did not wish to participate in the proceedings. The April 28 report did not indicate whether CFS had asked Mother's five other siblings about L.C.'s possible Native American ancestry and status as an Indian child. On May 2, the court found that ICWA did not apply, declared L.C. a dependent, and ordered L.C. removed from parental custody.

On January 18, 2023, the court terminated Mother's reunification services. On June 21, the court terminated parental rights to L.C. and selected adoption as L.C.'s permanent plan. (§ 366.26.) At the time of the section 366.26 hearing, the NREFM was willing to adopt L.C. Mother timely appealed from the section 366.26 orders.

### III. DISCUSSION

A. *Legal Background and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to

5

follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

Section 224.2 of the Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [Department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052; § 224.2)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the department's inquiry and due diligence was " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) "The finding implies that notice to a tribe was not required because social workers and the court did not know or have a reason to know the [dependent] children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885, overruled in part by *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152.) " ' "On a well-developed record, the [juvenile] court has relatively broad discretion to determine whether the agency's inquiry

6

was proper, adequate, and duly diligent on the specific facts of the case." ' " (*In re Dezi C.*, at p. 1141.)

B. *Application*

As an initial matter, we disagree with Mother's argument that an adequate inquiry necessarily required CFS to ask every identified family member regarding the children's potential status as Indian children. As our Supreme Court has explained: "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) Thus, we disagree with Mother's argument to the extent she contends that the mere failure to interview a handful of extended family members is sufficient to show a lack of substantial evidence in support of the juvenile court's implied finding that social workers fulfilled their duty of inquiry.

Nevertheless, upon review of the record in this case, we conclude that the juvenile court's implied finding that CFS fulfilled its inquiry duty under section 224.2 is not supported by substantial evidence and, as a result, any finding by the juvenile court that an adequate ICWA inquiry had been conducted constitutes an abuse of discretion. While we agree with CFS that an ICWA investigation need not be exhaustive, the juvenile court's finding that social workers fulfilled their duty of inquiry under section 224.2 generally turns on (1) whether social workers conducted an inquiry of extended family

members whom they were already investigating as part of their usual course of work (*In re S.S.* (2023) 90 Cal.App.5th 694, 704-705; *In re H.B.* (2023) 92 Cal.App.5th 711, 720); and (2) whether the record was sufficient to support a reasonable conclusion that the inquiry " 'has reliably answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding "is or may be an Indian child." ' " (*In re H.B.*, at p. 720.) In our view, the ICWA inquiry efforts documented by CFS in this case were not sufficient to meet the first prong of this test.

As CFS concedes, Mother provided contact information for two maternal aunts at the time the children were detained.{CT 35} By statute, CFS was obligated to contact at least these individuals to inform them of their right to request participation in the care and placement of the child. (§ 309, subd. (e)(1); California Rules of Court, rule 5.534(b)(3); *In re K.B.* (2023) 97 Cal.App.5th 689, 697.) Thus, these two maternal aunts were extended family members whom CFS was already obligated to investigate as part of their usual course of work. The failure to contact these family members renders CFS's ICWA inquiry efforts in this case inadequate. As a result, any implied finding by the juvenile court that the inquiry was adequate under section 224.2 is not supported by substantial evidence and constitutes an abuse of discretion. And when an ICWA inquiry is inadequate, "conditional reversal is warranted in order to develop the record and cure the inadequacy." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1145.)

We emphasize that, upon remand, our opinion should not be construed as limiting any subsequent inquiry to any specifically identified family members. Instead, the duty is to make reasonable efforts to conduct an inquiry that reliably answers the question of

whether the children are Indian children. Thus, depending on the responses received in the course of any subsequent investigation, it may become unnecessary to inquire of additional identified family members currently identified in the record. Conversely, it may become necessary to inquire of a family member who has yet to be disclosed. Ultimately, the juvenile court has discretion to find that CFS has fulfilled its duty of inquiry so long as the record supports the conclusion that CFS contacted family members whom it is already obligated to contact as part of its normal duties and took reasonable steps sufficient to reliably answer the question of whether the children are Indian children within the meaning of ICWA.

## IV. DISPOSITION

The order terminating Mother's parental rights is conditionally reversed and remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of Rules of Court, rule 5.481(a)(5). If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and it concludes ICWA does not apply, then the juvenile court shall reinstate the order terminating parental rights. If, instead, the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C., §1912, subd. (a); §§224.2, subd. (i)(1); 224.3 and 224.4.)

9

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS

J.

We concur:


CODRINGTON

Acting P. J.

RAPHAEL

J.